We'll turn to our day calendar. In re Fairfield Sentry Limited. Good morning, Your Honors. May it please the Court. Kathleen Sullivan for Appellant Farnam Place, LLC. Your Honors, as this comes to you today, this case concerns a narrow issue of statutory construction, and that is whether the entrustment power granted to foreign representatives in a foreign main proceeding under Chapter 15 of the Bankruptcy Code obviates the need for the 363B hearing that would otherwise take place under Section 1520A-2. And to walk you through that, if I could. Well, you do have a preliminary hurdle to clear, and that's whether this was covered by the mandate in the earlier appeal. Happy to address that, Your Honor. It was not, Your Honor. So we litigated in the first case before the bankruptcy court the issue that was decided by the circuit in its previous decision, namely whether the property at issue, the claim against the Madoff estate, was property within the territorial jurisdiction of the United States under Section 1502.8. That was the sole issue reached and decided by the circuit. We didn't obstruct the bankruptcy court. We remanded and told the bankruptcy court to consider all the 363B factors on remand. So wouldn't that necessarily have concluded that the entrustment order did not satisfy 363B? Your Honor, the argument I'm making to you here is that entrustment is a separate exception, that entrustment under 1521A-5 is an exception to 363B hearings in a case where entrustment has been granted, and that's the exception. But, Your Honor, let me just go back to why the circuit did not preclude this argument. We litigated it in the bankruptcy court initially before Judge Lifflin, the late Judge Lifflin. We offered entrustment as an alternative ground. Judge Lifflin did not reach it. The district court also, in affirming Judge Lifflin, initially did not reach entrustment. And this court did not reach entrustment, even though offered. Did you brief it to this court in the prior appeal? Yes, Your Honor, we did as an alternative ground, but it wasn't reached. Your Honor, I think the most important... Well, but the mandate by remanding for section 363 review implicitly concluded, implicitly rejected your alternative argument. It did not, Your Honor. And the reason why is that when this court wants to say we've rejected your alternative grounds, it says so. We cite a typical case on page 27 of the blue brief. And you didn't say that here. But we also don't remand for the district court to do a feudal act. So, I mean, it's implicit that the entrustment order would not have satisfied 363. Otherwise, we wouldn't have sent it back to do 363B analysis. That's the problem I'm having. Two answers, Your Honor. First, our alternative argument is the 363 analysis in a Chapter 15 case, unlike a Chapter 7 case or a Chapter 11 case like Lionel, should take into account a conflicting ruling of the foreign tribunal administering the foreign main proceeding. So we don't think your decretal remand, the decretal sentence precluded consideration of the conflict with the BVI court. So that's answer number one. We think... But you run right into what the BVI court said, even on the assumption that you were right in principle about what you said, namely, that the U.S. courts would do whatever the U.S. courts would do. It's really no different than what was before this court, but ultimately, I think, not essential to the decision in Chevron against Donziger, where the Ecuadorian court affirmed a 19 or $9 billion judgment, said we're not going to reach any of the claims of fraud in the procurement of the judgment. Case comes to the United States, held fraud in the procurement of the judgment, and the argument that it violated comity because the Ecuadorian court should be respected was rejected, at least in the district court, partly on the ground that the Ecuadorian court said, well, this is going to be litigated in the United States. Why is that any different? Your Honor, the litigation in the United States is exactly what I'm raising before you here. In other words, the district, the bankruptcy court and the district court below, we think erred in the merits, and I would like to reach the merits, because this court, of course, has the discretion to say that the spirit of the mandate allows us to litigate this alternative ground. But so, Your Honor, what's different here is entrustment is an issue you only reach after we've decided the issue you decided in the prior case. That is, after we are talking about property in the territorial jurisdiction of the United States. You only get to entrustment after we're there by the language of 1521. If I could just appeal to the merits and suggest that this court should not interpret ambiguous decretal language that did not expressly say we have reached your alternative arguments and reject them, and didn't even do so when we offered the court an opportunity to amend the decision on remand, you have the discretion, and we don't think you should impose 363B hearings on every Chapter 15 case in which entrustment has been granted without full plenary consideration of the merits. May I ask the court's indulgence to explain the merits argument briefly? The merits argument, in brief, goes like this. There's a general world and a default world. Sorry, there's a general default world, and then there's an exception. The general default world is set up by 1520A2, upon recognition of a foreign main proceeding. The default is, if you go to A2, that Section 363 applies to a transfer of an interest in the debtor in property that is within the territorial jurisdiction of the United States. What does that mean? It means the minute there's recognition of a foreign main proceeding, the foreign representative here, Mr. Criss, has the power under 363 to sell property that is within the territorial jurisdiction of the United States. We know that from 363. These are reprinted for your convenience in the Special Appendix. Page 91, 1520A2, says Section 363 applies. If we go to Section 363, which is in the Special Appendix on 84, 363B says, as a matter of the general default rule, the trustee, after notice in a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate. So, Your Honor, the general, I'm going to invoke the specific controls, the general canon. The general rule is 363B hearings, to sell property outside the ordinary course. What 1521A does, then, if you turn to the Special Appendix, page 92, is it creates a specific, additional form of relief. And A5, in our argument, the only way to in the foreign representative, to sell property without a 363B hearing. 1521A5 is a specific exception. How do we know this? Don't take it from me, take it from Mr. Criss. On page 272 and page 272-73 of the appendix, you'll find his petition. And his petition for special, for recognition of the foreign main estate, and for special entrustment authority, says, I'm asking for this as if that were so, why on earth would the court have ordered a 363B hearing? Your Honor, I made pretty clear that that was the direction to the district court. I think, Your Honor, the court simply didn't reach or decide this novel issue of first impression. There's no indication that it reached it. As we, as we cite on page 27, the typical course, it's happened to me many times, Your Honor, when you don't like the alternative arguments, you tell us that you have considered the alternative arguments and you have not agreed with them. That was specifically lacking here, conspicuously lacking here. And we think the reason is, this is new Terra Nova, we're just learning what chapter 15 means. It would be very strange to decide by implication a novel issue of statutory interpretation. And why this matters, Your Honors, is 1525, sorry, 1521A5, entrustment authority, is sought in a minority of cases. It's sought as a special privilege. What Mr. Criss asked for in joint appendix pages 272 to 73 is, I would like to have my relief as of right under 1520, and then, you know, the automatic stay, and then I'd like to have further additional relief as authorized by section 1521, including page 273, entrusting the administration of the BPI property, administration and realization of Sentry's assets to me. Now that happens in, by our account, it's a quarter of the time that that special additional exception is given to foreign representatives. I don't think this Court should impose 363B hearings on every entrustment case without full discussion of the merits, which wasn't done by the prior panel, and we respectfully request that you do here. I've gone over my time already, Your Honors. Thank you. I know you want to reserve some time for rebuttal, so we'll hear from your adversary. Counsel. Thank you, and may it please the Court. Jeff Lamkin for the foreign representative, Mr. Criss. In Sentry 1, this Court remanded with instructions to conduct the section 363 proceeding. It said that the Bankruptcy Court must consider the increase in value that occurred following the grant, following the deal up to the time of the bankruptcy hearing, and it reminded the Bankruptcy Court of its broad discretion and its duty to ensure that there's maximum value for creditor benefit. Conducting the required section 363 review, the Bankruptcy Court here found that sale price was, quote, woefully inadequate, disproportionately low, and did not make economic sense. The Bankruptcy Court committed no abuse of discretion in determining that the foreign representative had a good business reason for seeking disapproval of a sale at that price. It simply doesn't make economic sense to require the foreign representative to sell an asset that's worth at least $138 million for $74 million. So should a section 363 review be different in the Chapter 15 context? Isn't there something special about this interaction? I think Sentry 1 and the statute already tells us the answer to that, and that is that Section 1520 tells you that Section 363 applies to the same extent as it would in Chapter 7 and Chapter 11. And so the same results that occur in Chapter 7 and Chapter 11 should apply in a Chapter 15 proceeding where Section 363 applies by virtue of Section 1520A. Should entrustment and foreign comedy have no effect on the analysis? Well, starting with entrustment, Your Honor, I think entrustment is foreclosed quite clearly by the mandate, since if entrustment were a good argument and it were raised below, and it was raised in the prior proceeding, then the remand for a Section 363 hearing would be completely unnecessary. An entrustment could not satisfy the requirement that the Bankruptcy Court consider the increase in value. Recall that entrustment occurred in July of 2010, but the increase in value didn't occur until 6 months later in December. So entrustment couldn't encompass the Court's directive to consider the increase in value as part of the Section 363 proceeding. But even on the merits, Entrustment cannot satisfy or vitiate the need for a 363 hearing. In effect, what Farnham's argument is that when you read Section 1521, Entrustment, you should read it as saying, Entrustment for administration and realization, notwithstanding the requirements of Bankruptcy Law. And it simply doesn't have that notwithstanding clause in there. In fact, if it implicitly meant Entrustment for realization, notwithstanding Bankruptcy Law, it would also implicitly mean Entrustment for administration and realization, notwithstanding non-Bankruptcy Law. So you would be immune from regulatory approvals as well. It's the key thing here is the phrase that the power that's granted is Entrustment. And then the statute actually provides two purposes for that power. You're entrusted for administration, and you're entrusted for the purpose of realization. But in specifying those two purposes, it would be very odd for Congress to mean you're entrusted with the assets for those purposes. And you may do so regardless of what any other source of law might limit your ability in that respect. So if we entrust you with a broker, you can operate that broker, administer it, notwithstanding the securities laws. That's not at all what Congress meant. What Congress was doing here was it had a very general term, Entrustment for administration and realization, which encompasses a broad swath of powers, including, for example, pursuing causes of action, for example, collecting debts, things that aren't even sales at all, and also sales. But if you have a non-ordinary court sale, then Section 363 applies. The general power of Entrustment does not supersede the specific requirements of Section 363 where they otherwise apply. Is there anything else in addition to 363 that would limit the approval given by the U.S. Bankruptcy Court that the confirmation of sale, that the sale document anticipated? I gather that the auction was subject to approval both by the BVI Court and by the U.S. Court. And I'm looking for what constraints there might be on that approval. In essence, whether the deal was just ephemeral because it was subject to unconstrained exercise of discretion by both courts or whether there was some core that was still enforceable. Yes, I think the discretion is hardly unconstrained because the Bankruptcy Code provides how that discretion is exercised. And in essence, when you have an auction or a sale, the bankruptcy judge is going to approve it so long as there's a good business reason for the sale. And in this case, the request from the foreign representative was for disapproval. And so the question is, is there a good business reason for what he is asking for? And it seems to me that there's basically an unanswerable business reason for the relief that the foreign representative sought here. And that is that it just makes no economic sense for the creditors, for the estate, for the interest that he's supposed to represent to go through with a deal. And that just reflects a larger principle of bankruptcy law. And that is, in bankruptcy law, when you deal with an estate, you always know your deal is not a deal until it's approved by the Bankruptcy Court. So typically, when they have one of these sales, somebody runs in the very next day and gets the approval to finalize that sale. It's a very unusual event that there's a huge change in circumstances like here. But the bottom line is, Lionel and this Court's Decision Sentry make absolutely clear that once you have a sale, a non-ordinary course sale, you've got to get Section 363 approval. And that means you have to consider whether it's a fair price. Is it any different with respect to a 1919 approval of settlement of a claim? Can this run all through the Bankruptcy Code? Yes. There are approval requirements throughout the Bankruptcy Code. Anytime you're dealing with a delicate matter of disposing of assets of the estate, you often have to go to the Bankruptcy Court to get approval. And that is because this is just not an ordinary deal. This is a deal that affects the rights of creditors, the rights of other interested parties who may not otherwise have an ability to object and get a seat at the table. And so throughout the Bankruptcy Code, Congress has decided to incorporate these requirements for various activities. And for 1520A, for Main Proceedings, it expressly incorporated Section 363. It made it applicable. And it doesn't make sense to take 1520A-1-5 authority, the Entrustment Authority, as an exemption from this specific requirement because Entrustment Authority is a very, very broad set of abilities. It includes things like turnover, your ability to get all of the assets. Normally, that's done under a section called 542 for the Bankruptcy Code, but that isn't included in 1520A. So you have to go to Entrustment Authority to get that turnover authority. It includes the ability to make other sales. If I could briefly turn very quickly to the question of comedy, which Ms. Sullivan referred to quickly, it's simply not possible to read this Court's mandate in Century 1 and come to the conclusion that any Bankruptcy to say, yes, I have found the price is woefully inadequate and does not make economic sense. But based on comedy alone, I will find that there's no good business reason for the foreign representative's request for disapproval. There's feature after feature after feature that says that comedy simply cannot carry the day in this case. And the Bankruptcy Court did not abuse its discretion in concluding that it did not. First, for example, while the Court very carefully went through factor after factor that the Bankruptcy Court would have to consider, the one that was conspicuously absent is comedy itself. And that's quite telling because comedy was the core of the case when it was before this Court before. It would be very odd for this Court to think that comedy could carry the day and then remand and not mention that comedy was an element. Second, the decision that was under review in Century 1, in that case, the District Court actually did count comedy as a factor within Section 363 and used that as a reason for rejecting the foreign representative's request for relief. The District Court there said, even if Section 363 applies, and I'm quoting from Special Appendix, page 61, in light of the comedy considerations at play here, I should not overturn the BVI Court's ruling. It would be very odd for this and then remand and expect the same exact result under the same rationale of comedy here. JUSTICE GINSBURG You know, there are, I mean, the leading commentary on bankruptcy is not prepared to exclude comedy playing some role in these proceedings. But we don't really have to reach that. Do we, given what Judge Kaplan noted at the outset, that in this particular case, we have reason to think that the BVI Court fully anticipated that there would be a distinct American assessment of the sale? I think that's right. I think in footnote 2 of the Court's prior opinion, it made very clear, and in the text, that the BVI Court did not anticipate or expect comedy. It would expect the U.S. courts to apply U.S. law. And in fact, it really wouldn't make sense to have comedy here. The one factor this Court remanded and demanded that the Bankruptcy Court consider was the increase in value. And that's the one factor that the BVI Court didn't consider. But the BVI Court went even further. It made absolutely clear that the matter was to be presented to the U.S. Court and that it was to be presented in a manner which enabled the U.S. Court to either approve or reject. I don't know how it could have been any clearer. I think it could not have been clearer, Your Honor. The BVI Court was absolutely clear that if the U.S. Court's disapproved, then the trade confirmation was at an end, and it was fully satisfied with that result as any other. If the Court has any other questions, we ask that the judgment be affirmed. Ms. Sullivan, you're reserved three minutes. Thank you, Your Honor. My friend Mr. Lampkin has talked about everything except the fact that this is a foreign bankruptcy. This is not a bankruptcy that is an estate in front of a U.S. Bankruptcy Court. It's an estate located in the British Virgin Islands in which the BVI Court decided unambiguously that the sale deserved approval under the insolvency law of the British Virgin Islands. And it's rather remarkable that this case has evolved to have an American Court sit to veto the decision of the BVI over its own estate. To answer Judge Carney's question— But you invited it to do so if it felt it was appropriate. Your Honor, the British Virgin Islands deferred to the U.S. Bankruptcy Courts. We think they meant the Madoff Court. We won't relitigate that here. But what I'm arguing to you here is that the statute requires the U.S. Bankruptcy Court to properly apply the statute. Forget about what the BVI Court said. The statute— But the 1321 starts out by saying that entrustment is done where necessary to effectuate the purposes of this chapter and to protect the assets of the debtor or the interests of the creditors. And it's to serve those interests that the court may then take the enumerated actions. So I'm not sure that the notion that the court is just like a pass-through for the BVI judgment is a way we can look at what happened here. What — why do you think that's not so? Your Honor, I'm not arguing for a pass-through. What I'm — precisely because of 1521a and the discretionary determination of the court to grant entrustment authority, backed up, by the way, Your Honor, by 1522a, which also says the judge in granting entrustment authority has to take into account the interests of U.S. creditors. It's in making that decision that the court decided, Mr. Criss is the minion of the BVI Court, to use Judge Lifflin's word, the representative of the BVI Court. I am leaving it to him to distribute the assets of this BVI estate — sorry, to realize the assets of this BVI estate. And precisely because of that, Your Honor, it's not a conduit. The judge made a — Judge Lifflin, in this case, made a determination in his 1521a-5 entrustment order. Remember, Judge Lifflin does two things at the outset of this. Judge Lifflin, the James Madison of Chapter 15, so to speak, because he was there on the UNSA trial. He said, I'm giving recognition to the foreign main proceeding, and I'm giving Mr. Criss the second thing he asked for. That's entrustment authority under 1521a-5. That's additional. So, Your Honor, he made the judgment that Mr. Criss was the best judge of the interests of the BVI insolvency, the debtor, and of the interests of creditors. He made the determination there was no harm to U.S. creditors. Otherwise, he wouldn't have given that authority in the first place. So I'm arguing for the opposite of a pass-through. I'm arguing that the entrustment grant under 1521a-5 said, Mr. Criss, you go out and sell the assets. And when you sell them, you'll, of course, be bound by BVI insolvency law. Judge Kaplan, he never came up with this idea he needed U.S. court approvals under 1999 or anything else until this litigation. When he started out, he made a settlement with the Madoff administration without 363 review. He made a settlement with Safra Bank without 363 review. He only made up the need for 363 review to try to back out of our deal. And he does need it because that's the mandate of the first court. It's not, Your Honor. Let me go back to the alternative argument. I think it's absolutely correct, as Judge Carney suggested in her question, that Chapter 15 doesn't lead to the same kind of 363 review for Chapter 15 as for 7 or 11. Chapter 15 proceeding in front of the first panel, too. I mean, you know, and the first panel said, do 363B review. Your Honor, the first panel, with respect, didn't preclude the alternative argument that 363 review is either obviated or satisfied ex ante by the grant of entrustment power. Your Honor, my friend wants to read 1525, sorry, 1521A5 out of the statute for the foreign representative of a foreign main proceeding who tries to realize assets. The superfluity canon, the specific controls, the general canon, and the purpose of Chapter 15 should lead you to reject that statutory construction. It's wrong. Otherwise, 1521A5 means nothing. And Mr. Criss meant nothing when he came to Judge Liflin and he said, give me this extra authority. And we thank you as a matter of law for the circuit, because this is very important in future cases as Chapter 15 cases grow. You should hold that entrustment authority means something, that 1521A5 means, unless or until somebody comes to us and says, take away Mr. Criss's freedom to realize the assets of the BVI estate, unless and until someone does that, we're going to give him that freedom and not require him to come in for 363 review every time he tries to sell something. Your Honor. I think we understand the argument. In the alternative, kindly remand to at least call the BVI court under 1525B. Thank you. Thank you. Thank you to both sides. We'll take the matter under advisement.